The International & Great Northern Railway Company et al.
v. W. N. Brazzil.

No. 2906.

. 1. **Ratification of an Act Done When Insane.**—In an action for damages for personal injuries inflicted in a railway wreck the defendant, the railway company, pleaded a release by plaintiff and payment under it. The plaintiff replied his insanity at the time it was executed. There was testimony showing that the plaintiff after signing the release received the money named in it and in some way disposed of it. The judge upon the subject instructed the jury "that if the plaintiff was insane or unconscious and incapacitated to contract at the time he signed the release, under rules above laid down after the said Brazzil (plaintiff) became conscious that he had signed such a release and was informed of its nature and character, and that he had received said money and paid it out on his debts with a knowledge of where said money came from, and that he had received it from defendants in compromise of and in release for the injuries he received, and he did not promptly disaffirm the contract, but acquiesced in it, then you will find for defendants in favor of said release." *Held*, that the charge presented the law of the case.

2. **Charge—Form.**—It is not necessary nor is it practicable in every case to present every phase of the case in one paragraph, nor does it conduce to clearness to attempt to do so. It is no objection to a charge that limitations and distinctions are in separate paragraphs from the one limited. See example.

3. **Excessive Verdict.**—This court will not reverse alone upon the ground that the verdict for damages is excessive, where there is testimony sustaining the verdict and the issues were fairly submitted to the jury.

4. **Exemplary Damages.**—Plaintiff was injured in a train wreck in which there ·
was negligence shown against the railway company. It was also shown that the defendant company was putting the road in a better state of repair, placing new ties and rails upon the track, had lessened the time in the interest of safety, etc. The wreck occurred from a rail breaking and in an unusual spell of winter weather. *Held*, that such facts should prevent a verdict for exemplary damages.

Appeal from Smith. Tried below before Hon. Felix J. McCord.

This suit was filed on the 26th day of April, 1888, by appellee to recover of appellants both actual and exemplary damages for certain injuries alleged to have been sustained by him while a passenger on defendants' train, in a wreck between the towns of Troupe and Tyler, on the 26th day of December, 1887. Appellants plead a general denial, and specially plead a compromise of said claim and release duly executed by plaintiff on the 6th day of January, 1888, and also confirmation and ratification of same on part of appellee. A trial was had, the jury finding the release invalid and finding for plaintiff the sum of $20,000, less $546.66, amount of release and interest thereon, as actual damages, and $4500 as exemplary damages, making the net total of said judgment the sum of $23,953.34. From this judgment appellants prosecute this appeal. This is the second appeal in this case. 72 Texas, 233, which contains a full statement.

*Whitaker & Bonner*, for appellants.— 1. The charge [see opinion] is

misleading, in that it makes a knowledge on the part of the plaintiff at the time he used and paid out said money necessary to a ratification on his part, when the contract is a valid one, even though he had no such knowledge, if after he regained consciousness the same was not promptly disaffirmed by him.    Railway v. Brazzil, 72 Texas, 233.

2.    The court erred in all that part of its charge to the jury which reads as follows, to-wit:  "But if at the time he signed said release he was unconscious and not in his right mind this would defeat the release, or if at the time he signed said release he was suffering from physical pain, fevers, and mental anguish to such an extent as to incapacitate him to comprehend the character, extent, and consequences of the contract, then this would defeat the release."

(1) Because the charge states as a proposition of law that if plaintiff was unconscious and not in his right mind at the time he signed the release this would defeat the release.

(2) Because the charge states as a proposition of law that if plaintiff at the time he signed said release was suffering from physical pain, fevers, and mental anguish to such an extent as to incapacitate him to comprehend the character, extent, and consequence of the contract, then this would also defeat said release.

(3) Because said charge as given is calculated to mislead the jury, in that it does not in that connection charge upon the effect of a subsequent ratification or failure to disaffirm said contract after he regained consciousness and became aware of said contract.

3.    The effect of the charge as given is to instruct the jury that if plaintiff was unconscious or incapacitated by his sufferings from comprehending the extent and consequences of his acts in making said compromise and signing said release, that the same was void, when in law said contract was a valid and subsisting contract unless after he regained consciousness he did within a reasonable time thereafter disaffirm said contract.

The charge as given is erroneous and calculated to mislead the jury, in that the effect of the same is to declare said contract void instead of voidable merely, under the conditions stated, and also because in that connection it does not submit the law of ratification of said contract by plaintiff or the effect of a failure on the part of plaintiff to disaffirm said contract after regaining consciousness and a knowledge of said contract on his part.    Railway v. Brazzil, 72 Texas, 233.

4.    The evidence shows that the plaintiff was sane at the date he executed the release pleaded in bar by the defendants herein, and the burden of proof being upon the plaintiff to prove his insanity, the verdict of the jury should have been in favor of defendants.

*T. N. Jones* and *J. N. Duncan*, for appellee, cited Railway v. Brazzil,

72 Texas, 233; Railway v. Gordon, 70 Texas, 87, 88; Railway v. Doyle, 18 Kans., 58; Packet Co. v. Defries, 94 Ill., 598; Kilgore v. Cross, 1 Fed. Rep., 578; Edwards's Trustee v. Davenport, 20 Fed. Rep., 756.

GAINES, ASSOCIATE JUSTICE.—This is an action brought by appellee to recover of appellants damages for personal injuries received by him while a passenger on the train of the Missouri Pacific Railway Company while being operated on the road of its codefendant. This is the second appeal by the defendants in this suit. The facts of the case are fully shown in the former opinion, which is reported in 72 Texas, 233.

Upon the subject of the release which was executed by the plaintiff to the defendants, the court gave the following instruction, to-wit:

"That is, gentlemen, if the plaintiff was insane or unconscious and incapacitated to contract at the time he signed the release, under the rules above laid down after the said Brazzil became conscious that he had signed such a release and was informed of its nature and character, and that he had received said money and paid it out on his debts with a knowledge of where said money came from, and that he had received it from defendants in compromise of and in release for the injuries he has received, and he did not promptly disaffirm the contract, but acquiesced in same, then you will find for defendants in favor of said release."

This charge is complained of "because the same does not instruct the jury in that paragraph as to the effect of a ratification of said release, and charges the jury that the validity of the same depends entirely upon the consciousness of the plaintiff at the time of said release;" and also because "the charge is misleading, in that it makes a knowledge on the part of the plaintiff at the time he used and paid out said money necessary to a ratification on his part, when the contract is a valid one, even though he had no such knowledge, if after he regained consciousness the same was not promptly disaffirmed by him."

The only evidence of any ratification of the release consisted in the fact that the plaintiff had in some manner disposed of the money paid him in consideration of the release, and we think the instruction is strictly in accordance with the law as laid down by this court upon the former appeal, and pointedly presented the issue of fact made by the testimony.

The two important questions upon this branch of the case were: Was the plaintiff mentally capable of contracting when he signed the release? and (2) Did he expend or retain the money paid him after he became conscious of the source from which he obtained it, and after he was capable of understanding the nature and consequences of the contract he had made? The charge is not subject to the objections urged against it.

The following charge is also assigned as error: "But if at the time he signed said release he was unconscious and not in his right mind, this would defeat the release; or if at the time he signed said release he was

suffering from physical pain, fevers, and mental anguish to such an extent as to incapacitate him to comprehend the character, extent, and consequences of the contract, then this would defeat the release."

We understand the objection to the charge to be that it does not in the same paragraph, or at least in the same connection, charge the jury as to the effect of a ratification of the release. An examination of the entire instructions upon this branch of the case discloses that the jury were properly charged both as to the law affecting the validity of the release and as to the facts necessary to be established in order to show a ratification in case it was invalid, and in such a manner that the jury were not misled. It is not necessary nor is it practicable in every charge to present every phase of a case in one paragraph. Nor does it conduce to clearness to attempt to do so. The charge given by the court was, we think, sufficiently clear and explicit upon the effect of a ratification of the release.

It is also complained that the verdict is contrary to the law and evidence both upon the issue of the sanity of the plaintiff at the time he executed the contract and upon that of a ratification. The large sum awarded as damages by the verdict of the jury has demanded at our hands a very careful consideration of the testimony presented by the record. It is voluminous and conflicting, and a discussion of it here will subserve no useful purpose. It is sufficient to say that there is evidence to support the verdict in the particulars complained of in the assignment under consideration, and that the finding is not against such an apparent preponderance of evidence as under the well recognized rule of this court to justify a reversal of the judgment.

It is also insisted that the damages assessed by the jury are excessive and that no exemplary damages should have been awarded. But there was testimony tending strongly to the conclusion that as a result of his injuries the plaintiff has been rendered a wreck both in mind and body. He is subject to epileptic fits, and his physical and mental condition is such as to render him unfit to labor. He was before the accident an industrious and able bodied mechanic. His sufferings must already have been great, and in all probability will continue so long as he shall live. Under such circumstances we can not say that the amount of the actual damages awarded is the result of passion or prejudice in the minds of the jury, and therefore can not reverse the judgment on account of the amount of the recovery only.

But in regard to the exemplary damages the case is different. The testimony it is true shows that the road was in very bad condition. There was old iron and rotten ties in abundance upon the track. But on the other hand the accident occurred during an unusual spell of weather— not such it is true as to exonerate the appellants from liability for the accident, but such as to have contributed largely towards bringing it about.

The company was putting the road in a better state of repair at the time the accident had occurred. Many new ties had been put in and new rails had been supplied. The time of the trains had been lessened to ten miles per hour. It was negligence not to have a better road bed and track, but these circumstances show that there was not such an utter disregard of the safety of persons who were being carried by the appellants' trains as will in our opinion justify the recovery of large exemplary damages in addition to the large verdict for actual damages awarded by the jury.

If the plaintiff sees fit to remit the exemplary damages the judgment will be affirmed, otherwise it will be reversed and remanded.

*Affirmed.*

Delivered October 21, 1890.

Motion for rehearing was refused.